IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Stacie Ann Hargis-Getsinger,<br><br>Defendant. | CASE NO. 1:21-CR-00607-EGS |

**MEMORANDUM IN AID OF SENTENCING**

Stacie Getsinger submits the following memorandum in aid of sentencing, which is scheduled to occur before the Honorable Judge Emmet G. Sullivan on April 21, 2022. Based on Ms. Getsinger's background, her extremely limited role in the January 6 Capitol riot and incursion, and the sentences imposed for similarly situated defendants, Ms. Getsinger respectfully requests the Court impose a sentence of probation and a payment of $500.00 in restitution. A term of supervision would best effectuate the sentencing goals of 18 U.S.C. §3553(a), particularly considering Ms. Getsinger's history and characteristics and minimal participation in the events of January 6, 2021.  In further support of this request Ms. Getsinger provides the following.

## I. BACKGROUND

The instant case is a small part of what has been described as one of the largest investigations and prosecutions in American history.  (United States v. Calwell, Government's Motion to Continue, Doc. 73 p. 2; CR-21-028 (D.D.C.)). Ms. Getsinger has plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G) and has accepted full responsibility for her actions in the January 6 Capitol riot and incursion. Ms. Getsinger does not attempt to downplay the severity of the events of January

6, 2021, nor to minimize the historical significance of the violence and disruption in our nation's capital. Ms. Getsinger is filled with remorse and contrition for her actions and has taken full responsibility for her actions when she plead guilty.

Contrary to the Government's repeated assertions that Ms. Getsinger has no remorse and has not until recently expressed her remorse, Stacie Getsinger has, under the strict advice of counsel, not been able to express any remorse or contrition or discuss her case until after she plead guilty even though she has been remorseful and filled with sincere regret since the events occurred and, after a period of self-reflection,  she realized the significance of the event and her participation in the January 6 riot and incursion into the Capital building. Under the strict advice of counsel, Ms. Getsinger has been advised not to make any comments publicly or privately regarding this case to anyone ***including*** (emphasis added) her family. Ms. Getsinger fully understands the gravity of her participation in the events of January 6th and is ashamed of herself for going to the Washington D.C. and walking into the Capital.

Stacie Getsinger's embarrassment and shame has not been limited to home and family as she has been humiliated at work due to her participation in the January 6 riot. Stacie travels occasionally for her job and when she uses commercial airlines in her travel, she has been subjected to intense security scrutiny at the airport and has been treated as a terrorist. Stacie has been subjected to multiple pat downs and additional security screenings even after she has been admitted to a secure area where she is searched and screened again. Due to this intense scrutiny, Ms. Getsinger has been dealing with multi-hour delays in just getting through security to catch a flight.. Stacie must get to the airport at least three (3) hours prior to her departure or she will risk missing her flight due to the enhanced security measures. In essence, Stacie is now saddled with a "Scarlett Letter" as far as her ability to travel by air. These additional security checks have embarrassed her

in front of her coworkers and clients and are the direct result of her participation in the January 6 riot.

It has been over one year since President Donald Trump lost the 2020 election and announced a "Save America" rally to protest the results.[1] Ms. Getsinger traveled in a bus with members of his community to attend a political rally headlined by President Trump.  This was Ms. Getsinger's first trip to Washington, D.C. to hear a political speaker.  She and her husband attended the rally located at the Ellipse which is south of the White House, specifically south of Constitution Avenue between 15th and 17th Streets.

What began as a trip to hear what she thought would be the President's last speech and to hear from other politicians and political commentators, regrettably turned into an unruly mob attempting to take control of the halls of Congress. Ms. Getsinger was concerned and distressed that the election results were wrong and that the process was rife with "fraud" because, as with her husband, her sole source of news was FOX News and Facebook chat groups. When Stacie and John Getsinger took the bus to Washington, D.C., they wanted to hear from President Trump and his supporters and listen to their arguments and explain to them why the election results were wrong. Ms. Getsinger nor her husband John  never believed or intended that anything other than the certification of Joe Biden as the next President would happen. There was never an intent to participate in a  riot, insurrection or any other criminal activity that day. Stacie and John Getsinger

---

1      President Trump announced the rally on Twitter, tweeting, "Big protest in D.C. on January 6th . . . Be there,
will be wild!" *See* Dan Barry and Sheera Frenkel, *'Be There. Will Be Wild!': Trump All but Circled the Date,* The
New York Times (Jan. 6, 2021), available at
https://www.nytimes.com/2021/01/06/us/politics/capitol-mob-trumpsupporters.html.

were there to hear the President and his supporters and to try and make sense of the political rhetoric at the time. There were a multitude of speakers and when former President Trump did speak, he lamented that the election results were false, and he begged the audience to "fight" for him. Stacie and John listened to the speeches and then followed the masses of people walking down Pennsylvania Avenue to the Capital building where they planned to listen to Alex Jones speak. When the Getsinger's reached the Capital, they saw Jones standing on the back of a truck instructing the crowd to go the rear of the Capital building to see President Trump give his next speech, which in reality, did not occur.

Ms. Getsinger did not engage in violence or destruction when she walked up the steps to the Capital. Ms. Getsinger did not push up against or confront any law enforcement officers. Ms. Getsinger did not scream obscenities or break down any doors prior to entering the Capital. Ms. Getsinger did not show up with weapons, zip ties, helmets, goggles, backpack, or body armor; nor did she meet with others and plan and execute an attack on the United States Capitol Building.

Ms. Getsinger did enter the United States Capitol Building unlawfully on January 6, 2021, and she did so because she was swept up in the crowd mentality of the day, ***but*** (emphasis added) she did not engage in any violence or physical contact with Capital Police Officers, nor did she engage in any vandalism or destruction of property either before, during or after entering the United States Capitol Building. Ms. Getsinger is not and has never been a member of any extremist group such as the Proud Boys or the Three Percenters who deliberately traveled to Washington D.C. on January 6 as part of an organized attack on the United States Capitol Building. These extremists deliberately went to the United States Capitol Building with the explicit aim of disrupting the certification of the Electoral College.

Ms. Getsinger was not in Washington D.C. to disrupt the certification of the Electoral College; she was there to listen to President Trump and other speakers and in her mind, to exercise

her 1st Amendment right to free speech, the right to assembly and the right to petition the Government for a redress of grievances. Stacie Getsinger was seriously misguided regarding her 1st Amendment rights but she was trying to exercise them albeit in an imperfect way.

In video provided by the Government, Ms. Getsinger is seen walking up the steps of the United States Capitol Building from the Upper West Terrace door to the Rotunda. She did not engage in violence or assist others in breaching the building. After she entered the Capital building Stacie Getsinger walked to the middle of the Rotunda, holding her husband's hand, where they both stand for a few minutes looking at the art and the statues and then take a seat on a bench to the right-hand side of the door that they entered. During the time that Stacie and John Getsinger where siting in the Rotunda, they had a friendly chat with a Capital Police Officer who told them they could not leave the Rotunda at that time due to the massive amount of people entering the Rotunda at that time. The Capital Police Officer instructed Mr. and Mrs. Getsinger to wait until things "calmed down" before they left, and they followed those instructions. After remaining on the bench for approximately thirty (30) minutes, the Getsinger's then rise and briefly walk to Congressman Kevin McCarthy's office looking for a way out of the building and, after entering for approximately 40 seconds, they immediately walked back to the Rotunda and found a way to exit the building the same way they entered without incident or confrontation with police.

Ms. Getsinger's actual time in the United States Capitol Building was approximately 39 minutes, including time walking up the stairs, time spent in the Rotunda, the brief visit to Congressman Kevin McCarthy's office and waiting to leave out the same door they entered. Notably, Ms. Getsinger did not explore the United States Capitol Building beyond the Rotunda except for the brief 40 second visit to Congressman Kevin McCarthy's office. Throughout the United States Capitol Building, there are stairs and hallways connecting to various parts of the building. Many of these corridors connect to the Rotunda and lead to extremely sensitive areas

such as the Senate and House Chambers but Ms. Getsinger did not wander about and definitely did not enter these hallowed chambers.  Essentially she walked into the Rotunda, sat for a while and then walked through the Rotunda and exited the building.

At no point did Ms. Getsinger engage in or incite any violence.  She was mostly silent during her time inside the United States Capitol Building.  Stacie Getsinger did not chant or scream with others; she did not call for harm to come to anyone and she did not damage any property. Stacie came plain clothed, with no political messages.  She did not carry a flag, nor did Stacie Getsinger come with protective gear, such as padding, helmets, goggles, backpack, or body armor. She did not carry a radio or pepper / bear spray. Stacie Getsinger did not come to the United States Capitol Building looking for a fight. Stacie Getsinger walked in an open door not a smashed window and recorded herself traveling through and sitting in the Rotunda and, after 39 minutes, exited out the same door she entered.

While she was in the United States Capitol Building, she was passed a marijuana cigarette and she took a puff and then passed the marijuana cigarette back to the person that passed it to her. After she exited, Ms. Getsinger remained outside for a few more minutes before she left the United States Capitol Building grounds and returned to the bus to return home. Her time in the United States Capitol Building was spent looking at the events that were taking place, unfolding around her, and documenting her experience with her cellphone until her battery died rather than actively contributing to the chaos outside or inside. Ms. Getsinger played an exceedingly small role in the January 6, 2021, riot.

Ms. Getsinger is not proud of her participation in the events of January 6.  Ms. Getsinger realizes that even her minimal participation contributed towards a tumultuous, tragic and unnecessary event that is a stain on our nation's history. Additionally, Stacie Getsinger understands and regrets that her participation in the riot has destroyed her and her husband's life, both

professionally and personally including her estrangement from a lot of her family members and her husband John's partial estrangement from his 16-year-old daughter.  Stacie did not travel to Washington D.C. with the intent to storm the United States Capitol Building, disrupt democracy and become a social pariah. Stacie Getsinger was in Washington D.C. solely to see President Trump speak and to exercise her First Amendment rights. Ms. Getsinger is very ashamed of her behavior and is extremely remorseful for her conduct. She accepts full responsibility for her actions and is prepared for the consequences of her actions.

## II. THE 18 U.S.C. § 3553(a) FACTORS FAVOR A SENTENCE OF PROBATION

Ms. Getsinger has plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G). This is a class B misdemeanor or "petty offense," as defined by 18 U.S.C. §3559(a)(7) and it carries a maximum incarceration period of six months or less. The United States Sentencing Guidelines (Guidelines) do not apply to class B misdemeanors. *See* U.S.S.G. §1B1.9. Pursuant to 18 U.S.C. § 3583(b)(3), the Court is disallowed from imposing a term of supervised release for a petty offense, and if it imposes active, continuous imprisonment, 18 U.S.C. § 3551 ostensibly does not support an additional period of probation to follow. *See United States v. Torrens et. al.*, Crim. No. 21-cr-204 (BAH), ECF No. 110, 113, & 125.

Because the Guidelines do not apply, the Court is directed to look to 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a)(1) factors  include "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence imposed by considering if and how a term of incarceration would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;" *Id*. at (2)(A). Additionally, the Court should consider how a sentence would "afford adequate deterrence to

criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" *Id*. at 2(B-D). Ultimately, the Court must be aware of "the kinds of sentences available," and consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," and consider the "need to provide restitution to any victims of the offense." *Id*. at (3), (6), & (7).

### A.    <u>The Nature and Circumstances of the Offense</u>

There has never been an event quite like the January 6 riot in the United States. Stacie Getsinger has readily admitted to her participation in the riot notwithstanding that her involvement was in a minor way. To be clear, Ms. Getsinger played no role in organizing the January 6 events. Stacie was not violent and did not damage, destroy or steal any property or urge, incite or encourage others to do so. Stacie Getsinger is in an entirely different category from other defendants who were members of various extremist groups who conspired in advance to assault the Capitol and stormed Capitol Hill clad in body armor, carrying weapons and zip ties and used flag poles to break windows to force their way into the House Chamber and create bedlam.

The Government in its Sentencing Memoranda in this case as well as those of other January 6 defendants has proposed nine (9) factors for the Court to consider in crafting a just sentence for defendants involved with the January 6 attack. These are:

1) Whether, when, and how the defendant entered the Capitol Building;

2) Whether the defendant engaged in any violence or incited violence;

3) Whether the defendant engaged in any acts of destruction;

4) The defendant's reaction to acts of violence or destruction;

5) Whether during or after the riot, the defendant destroyed evidence;

6)   The length of the defendant's time inside of the building, and exactly where the defendant traveled;

7)   The defendant's statements in person or on social media;

8)   Whether the defendant cooperated with, or ignored commands from law enforcement;

9)   and; Whether the defendant otherwise exhibited evidence of remorse or contrition.

The Government's sentencing memoranda in these cases assert that these factors help place each defendant's conduct on a spectrum for the purpose of imposing a fair sentence for each individual. Applying those factors to the instant case, it is clear that Stacie Getsinger stands at the end of the spectrum furthest from the most culpable and egregious defendants who planned to participate in a violent insurrection and actually did so and who, according to the Government's nine (9) factors, are more deserving of a harsh sentence.

Regarding Factor 1), When Ms. Getsinger entered the Capitol at 2:44 PM she knew she did not have permission to do so, but she followed the crowd in through an open door. She did not break, smash or force open any windows or doors; nor did Stacie Getsinger fight with a member of law enforcement, she just walked through an open door. By the time Stacie Getsinger entered the building, hundreds, if not thousands, of others had already passed through the same door and law enforcement was passively standing by. Entering was not legal, but the way Stacie entered was not violent nor destructive and definitely puts Ms. Getsinger on the less responsible end of the spectrum.

Regarding Factors 2) and 3), Stacie Getsinger engaged in no violence or acts of destruction whatever, nor did she incite or encourage others to do so, and this definitely puts Ms. Getsinger on the less responsible end of the spectrum.

Regarding Factor 4), Stacie Getsinger witnessed some of the rioters fighting with law enforcement on January 6. But she never participated in these acts of violence. Stacie did make

some comments on Facebook that the press was lying about the violence and did post on social media that she and her husband "were thr [sic] first 100 that got inside" the Capital. After some serious self-reflection and a reality check regarding what really happened that day, Stacie Hargis is not proud of these posts because she realizes that the press was not lying about the events. In reality Stacie was simply caught up in the moment and just emoting with her nonsensical posts. Stacie Getsinger is saddened by her terrible judgment and is ashamed for her actions and feels strong remorse for what she has done. Stacie Getsinger was an observer, **not** (emphasis added) an orchestrator of the violence and bad actions that occurred on January 6 and this places Stacie Getsinger on the less responsible end of the spectrum.

Regarding Factor 5), Stacie Getsinger did not destroy evidence. To the contrary, when the FBI came to her house, she invited them in and showed them around. She not only handed over her cell phone but provided the code so that agents could examine data in the phone. This definitely puts Ms. Getsinger on the less responsible end of the spectrum.

Regarding Factor 6), Ms. Getsinger was inside the building for approximately 39 minutes. In that time, she did not cross any police line or enter the House Chamber. Stacie did briefly enter Congressman Kevin McCarthy's office for approximately 40 seconds before leaving. At this point many people had streamed in and out of that office before Stacie entered it. She did not ransack the office or take anything from the office. As Image 22 and Image 23 of the United States Sentencing Memorandum shows, there is no sign outside office Congressman Kevin McCarthy's office indicating that it is a congressman's private office. Even though her entry onto the Capital was illegal, it was only for a short period of time, approximately 39 minutes and only in the Rotunda area with a brief foray of 40 seconds into Congressman Kevin McCarthy's office. These actions show that Ms. Getsinger is on the less responsible end of the spectrum.

Regarding Factor 7), Stacie Getsinger differs from many of the more culpable January 6

defendants in that she only made a few online statements to others in the days following the riot. Quickly she realized the gravity of her and the other participants actions in the riot, Stacie became filled with remorse and contrition for her actions. Stacie immediately stopped all postings and discussions of any political nature and specifically any discussion of the January 6 events.

After her arrest in June of 2021, Facebook abruptly closed Stacie's Facebook account. The impact of the abrupt closing of her Facebook account had a severe financial impact on Stacie Getsinger because she operates a cottage industry of breeding and selling Savanah cats, which are a cross between a domestic cat and a serval; a medium-sized, large-eared wild African cat. When Facebook abruptly closed her account, Ms. Getsinger lost all of her business contacts and leads and records of her conversations with potential buyers and breeding partners crippling her ability to stay in business. Needless to say, today Stacie Getsinger has no more online presence with the exception of a new Facebook account that she solely uses to sell Savanah hybrid cats.

Regarding Factor 8), Stacie Getsinger cooperated fully with law enforcement when she was arrested. Stacie Getsinger believes deeply in following the orders of police officers. If any officer had told her not to go into the Capitol, she would have followed that instruction. Indeed, when an officer in the rotunda directed Ms. Getsinger to leave after it was safe to do so, she promptly did so. As discussed above, when the FBI came to her home in June, Stacie Getsinger was extremely cooperative. These actions show that Ms. Getsinger is on the less responsible end of the spectrum.

Regarding Factor 9), Ms. Getsinger herself will address the Court at the sentencing hearing, at which time the Court will have the opportunity to assess her remorse and contrition.

### B.    History and Characteristics of Ms. Getsinger

Ms. Getsinger was born and raised in Charleston Illinois and is the eldest of three children. Her parents are still married and still live in Charleston Illinois. Stacie left home when she was 18

years of age and has lived on her own since leaving home. Ms. Getsinger graduated from Charleston High School in Charleston Illinois in 1996. Stacie then enrolled in Lake Land College in Mattoon Illinois studying business administration. After two (2) years Stacie withdrew and decided that college was not for her and she went to work and has been steadily and gainfully employed ever since.

Stacie moved from the Charleston Illinois area to South Carolina when she was in her early 30's. Currently Stacie lives in Reevesville South Carolina, located in Dorchester County South Carolina, a modest small town with an approximate population of less than 500 people. Even though she lives in South Carolina and has lived here for more than 10 years, Stacie keeps in regular touch with her parents via telephone on a daily basis and visits with them in person at least one time a year. Stacie Married John Getsinger in May of 2016 and has no children of her own.

Ms. Getsinger has had only one previous contact with the legal system aside from several traffic tickets since she was 20 years old. On December 1, 2010 Stacie plead guilty to theft of less than $300, a misdemeanor, and was fined $750.00, 300 hours of community service and was subject to a 2-year conditional discharge that she successfully completed on November 28, 2012. Ms. Getsinger has not had any other contact with the legal system since that incident until her participation in the January 6 events.

Even though the sentencing guidelines do not apply, Ms. Getsinger would score in the lowest criminal history category due to her criminal history. Ms. Getsinger has no history of alcohol dependency and only drinks moderately but has used of marijuana several times a week for the last two (2) years. Since her arrest she has not used any illegal substances and will test clean if and when she is drug tested.

Since her arrest, Stacie Getsinger has completely turned off politics and the news. She, like

her husband John, does not trust what she sees on TV and hears on radio and has stayed off the internet in regard to news as she just cannot trust what she sees, reads or hears any more. Additionally, Stacie has shut off her social media except for the Facebook account to sell her cats. Stacie does not talk about politics with anyone.

Stacie Getsinger has been a productive member of society her entire life. She has always maintained steady employment since she was in her 20's. During the pendency of these charges, Ms. Getsinger lost her job due to her arrest but has quickly secured new employment with another company where she is responsible for developing leads and selling residential solar systems. Stacie wants to move on with her life and put this bad decision behind her. Stacie is ready to shed her "Scarlett Letter" and go back to her anonymous non-political life prior to her January 6 trip to Washington D.C.

### C.     Probation Accomplishes the Goals of Sentencing and Deterrence

The unique series of circumstances, both political and social, that led to the January 6 attack are unlikely to ever occur again. If these or similar circumstances where to ever occur again, it is a foregone conclusion that Stacie Getsinger would stay as far away from the event(s) as humanly possible and she would not participate in, comment on or play any role in the event(s) whatsoever. Stacie Getsinger has been a law-abiding citizen until she made a terrible decision to unlawfully enter the United States Capitol Building. As a result of her actions on January 6, Stacie was arrested and detained, harassed and ridiculed by family and strangers alike.

Wells Fargo, Stacie's bank where she had a relationship of over 10 plus years, involuntarily closed her accounts due to her participation in the January 6 riots. As discussed above, air travel for Stacie is a nightmare with the enhanced security screenings because of her "Scarlett Letter" with the Transportation Security Administration. Stacie Getsinger has become a social pariah and is estranged from some of her family members because she used bad judgment and illegally entered

the United States Capitol Building. Soon Stacie Getsinger will stand before a judge where her liberty and her future are at stake. The consequences of her actions on January 6 have devastated Ms. Getsinger and are more than enough to deter Stacie from ever making the same terrible choices again.

The Court must impose a punishment that is "sufficient, but not greater than necessary," to effectuate the policy objectives of Congress in 18 U.S.C. § 3553(a) and "to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S.Ct. 1170, 1175 (2017). This "parsimony" clause is the "overarching provision" of the statute. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Specific deterrence in this case is not a major factor. Ms. Getsinger does not require incarceration to protect the public from further crimes committed by her. For the reasons stated above, Ms. Getsinger wants to never be involved with anything like the January 6 riots or any other law-breaking activities again. She has paid a high price for her terrible decision to go to Washington D.C. and enter the United States Capitol Building illegally.

Ms. Getsinger understands the need for the Court to address the issue for general deterrence and understands that the Court may want to impose a sentence that would deter future individuals from committing the same or similar conduct. Respectfully, incarcerating Ms. Getsinger is not necessary to effectuate this sentencing objective. Her arrest, prosecution, and supervision have clearly indicated to the public that the United States Government will investigate and successfully prosecute these actions.

Ms. Getsinger and her husband have suffered immense humiliation, disgrace, loss of friends and family relationships and have generally been ostracized from society due to their participation in the January 6, 2021, events. John Getsinger has lost his employment due to his participation in the riot and both Stacie and John Getsinger have struggled financially to survive.

They so much, every day, wish they could return to that day, make the right choice, and simply walk away and not participate in the Capital riot. Additional punishment of incarceration is wholly unnecessary at this time for specific or general deterrence.

United States Probation in Ms. Getsinger's Sentencing Recommendation Report (SR) addressed "deterrence, community safety (incapacitation), and punishment" by stating that "Ms. Getsinger has been in compliance with her pretrial supervision and the terms of her release. She does not appear to present a danger to the community and goals of sentencing may be accomplished through a non- custodial sentence of probation supervision which would enable her to continue working. Rehabilitation does not appear to be a particular concern for this defendant." *See* SR ¶ 7, pg 2. Additionally, the Sentencing Recommendation Report states that "Ms. Getsinger's culpability appears to be minimal in contrast with rioters who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date." *See* SR ¶ 2, pg 1.

For the above referenced reasons, there is no need to impose a term of incarceration on Ms. Getsinger to deter her from ever committing additional crimes and to protect the public from any future crimes of Ms. Getsinger.

The United States Probation Office in Ms. Getsinger's Sentencing Recommendation Report has recommended that Stacie Getsinger be sentenced to "a term of 24 months' probation with the special conditions of supervision requiring the payment of restitution" of $500.00. *See* SR 7 , pg 2. The factors in this case including the recommendation from Probation counsel in favor of a sentence of probation.  A sentence of probation will reflect the seriousness of the offense. In *Gall v. United States*, 552 U.S. 38, 48-49 (2007), the Supreme Court noted that probationary sentences substantially restrict an offender's freedom. *Id.* ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Probation results in a lengthier term of supervision and it is a serious punishment requiring Ms. Getsinger to remain under

conditions.

### D.   Unwarranted Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6) the Court is also required to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. In this district, judges have imposed sentences of probation for violations of 40 U.S.C. § 5104(e)(2)(G) for defendants with more egregious facts that in Ms. Getsinger's case.

A non-exhaustive list of defendants convicted of 40 U.S.C. § 5104(e)(2)(G) who received a probationary sentence is attached as Exhibit A. Ms. Getsinger' conduct is comparable to these defendants. In fact, many of the defendants receiving probationary sentences engaged in more egregious conduct, including brazen social media posts about storming the United States Capitol Building, some being among the first people to enter the United States Capitol Building, entering through broken windows, and initially stating their actions were justified and proper, and many spending more time in places within the United States Capitol Building. The range of conduct yielding probationary sentences in other cases similarly charged strongly supports a probationary sentence for Ms. Getsinger.

## III. CONCLUSION

The Capitol riot and incursion on January 6, 2021, will be remembered in history as a bad day for the United States and a bad day for democracy. When Stacie Getsinger traveled to Washington D.C. she had no intention of participating in a riot or an illegal incursion into the Capitol or hurt anyone or damage anything. Stacie Getsinger did not organize or incite the riot, nor did she physically harm any person or property. Stacie has no criminal history except for the misdemeanor charge in Illinois in 2010 that is effectively a stale charge. Stacie Getsinger is full of remorse and self-loathing for her actions and she has taken full responsibility for her actions.

In light of Ms. Getsinger's limited role in the January 6 Capitol incursion, her stale criminal history, her sincere regret for her actions and the sentences imposed for similarly situated defendants, she prays this Court impose a sentence of probation and order her to pay $500 in restitution.

Respectfully Submitted,

s/ *Charles A. George*

Charles A. George, Esq.
DC Bar #1510644
charles@george-law.com
George Law Firm, LLC – Criminal Law Group
P.O. Box 354
Mount Pleasant, SC 29465-0354
Telephone: 404-441-3100
Facsimile:  843-388-4430

Charleston, South Carolina
April 3, 2022

Table 1: Cases in which the government recommended a probation sentence without home detention[1]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, 120 community service hours, $500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Wangler, Douglas | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |
| Harrison, Bruce | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 48 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |

--------

[1] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
| --- | --- | --- | --- | --- |
| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 40 hours community service, $500 restitution | 2 months of home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 40 hours community service, $500 restitution | 1 month home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 probation | 2 months' probation, $3,000 fine, $500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months of home detention, 24 months' probation, 80 hours community service, $500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 45 days incarceration, 60 hours community service[2], $500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 12 months' probation, 100 hours community service, $500 restitution |
| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, a fine, and $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 3 years' probation, 60 hours community service, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |

---

[2] The government believes the Court's 10/4/2021 minute entry in this case is incorrect and the sentence requires 60 *hours* of community service, not 60 *months*.

| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, 60 hours community service, $500 restitution |
|---|---|---|---|---|
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months' probation, $4000 fine |
| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $2500 fine, 60 hours community service, $500 restitution |
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 24 months' probation, $500 restitution, 100 hours community service |
| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, $500 restitution, 60 hours community service |
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 18 months' probation, $2000 fine, $500 restitution, 60 hours community service |

| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Miller, Brandon | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 20 days incarceration, 60 hours community service, $500 restitution |
| Miller, Stephanie | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hatley, Andrew | 1:21-CR-00098-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Wickersham, Gary | 1:21-CR-00606-RCL | 40 U.S.C. § 5104(e)(2)(G) | 4 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months home detention, 36 months' probation, $2000 fine, $500 restitution |
| Schwemmer, Esther | 1:21-CR-00364-DLF | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Kelly, Kenneth | 1:21-CR-00331-CKK | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 12 months' probation, 60 hours community service, $500 restitution |
| Sizer, Julia | 1:21-CR-00621-CRC | 40 U.S.C. § 5104(e)(2)(G) | 60 days home detention 3 years probation | 12 months probation $2,000 fine |

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | Not applicable | 6 months incarceration (time served), $500 restitution |
| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration (time served), $500 restitution | 6 months incarceration (time served), $500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration, $500 restitution | 3 months incarceration, $500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, $500 restitution | 90 days home detention, 36 months probation, $500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. §5104(e)(2)(G) | 2 weeks incarceration, $500 restitution | 90 days home detention, 36 months probation, $500 restitution |
| Gruppo, Leonardo | 1:21-CR-00391-BAH | 40 U.S.C. §5104 (e)(2)(G) | 30 days incarceration, $500 restitution | 90 days home detention, 24 months probation, $3,000 fine, $500 restitution |
| Ryan, Jenna | 1:21-CR-00050-CRC | 40 U.S.C. §5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $1,000 fine, $500 restitution |
| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. §5104(e)(2)(G) | 60 days incarceration, $500 restitution | 90 days home detention, 14 days community correction facility, 36 months probation, $500 restitution. |

| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $500 restitution, 60 hours community service |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 14 days incarceration, $500 Restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 60 days incarceration, $5000 fine, $500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 60 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 35 days incarceration, $500 restitution |
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 20 days incarceration (consecutive weekends), 24 months' probation, $500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 45 days incarceration, $1000 fine, $500 restitution |
| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $2500 fine, $500 restitution, 50 hours community service |
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $1000 fine, $500 restitution, 50 hours community service |
| Sorvisto, Jeremy | 1:21-CR-00320-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |

| Edwards, Gary | 1:21-CR-00366-JEB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 24 months' probation, $500 restitution | 12 months' probation, $2500 fine, 200 hours of community service, $500 restitution |
|---|---|---|---|---|
| Tutrow, Israel | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 2 months home detention, 36 months' probation, $500 restitution |
| Perretta, Nicholas | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Vukich, Mitchell | 1:21-CR-00539-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Spencer, Virginia | 1:21-CR-00147-CKK | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, 36 months' probation, $500 restitution | 90 days incarceration, $500 restitution |
| Kostolsky, Jackson | 1:21-CR-00197-DLF | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days home detention, 36 months' probation, $500 restitution |
| Rusyn, Michael | 1:21-CR-00303-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $2000 fine |
| Sells, Tanner | ~~1:21-CR-00549-ABJ~~ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 36 months' probation, 60 hours community service, $500 restitution | 90 days home detention, 24 months' probation, 50 hours community service, $1500 fine, $500 restitution |
| Walden, Jon | 1:21-CR-00548-DLF | 40 U.S.C. § 5104(e)(2)(G) | At least two weeks incarceration, 60 hours community service, $500 restitution. | 30 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Mariotto, Anthony | 1:21-CR-00094-RBW | 40 U.S.C. § 5104(e)(2)(G) | 4 months incarceration, 36 months' probation, $500 restitution | 36 months' probation, 250 hours community service, $5000 fine, $500 |

| Wiedrich, Jacob | 1:21-CR-00581-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, 36 months' probation, $500 restitution | 3 months home detention, 36 months' probation, 100 hours community service, $500 restitution |
| Stepakoff, Michael | 1:21-CR-00096-RC | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration | 2 months home detention 12 months probation; $500 restitution; $742 fine |
| Scirica, Anthony | 1:21-CR-00457-CRC | 40 U.S.C. § 5104(e)(2)(G) | 15 days incarceration; 4 months' home detention | 15 days incarceration $500 restitution; $500 fine |
| Crase, Dalton | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration 36 months probation | 15 days intermittent incarceration as a condition of 36 months probation; $500 restitution; 60 hours community service |
| Williams, Troy | 1:21-CR-00082-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration 36 months probation | 15 days intermittent incarceration as a condition of 36 months probation; 60 hours community service |
| Wilson, Zachary | 1:21-CR-578 - APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 24 months probation; 45 days home detention; 60 hours community service; $500 restitution |
| Wilson, Christine | 1:21-CR-578 - APM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 24 months probation 30 days home detention; 60 hours community service; $500 restitution |
| McAuliffe | 1:21-CR-608 - RCM | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration 36 months probation | 36 months probation; 60 days home detention; 60 hours community service; $500 restitution |